**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Baltimore Division**

RYE KEISHA JEFFERS,

       Plaintiff,

vs.

RAQUEL HARRISON-BAILEY, NEISHA L.           CIVIL ACTION NO.
BROWN., NEILE HICKS and MARYLAND      1:16-CV-03683
TRANSIT ADMINISTRATION,

       Defendants,

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS MOTION TO DISMISS**

    Plaintiff, Rye Keisha Jeffers, by and through her attorneys, KIM PARKER and THE LAW OFFICES OF KIM PARKER, P.A., submit the following Memorandum in Opposition to Raquel Harrison-Bailey, Neisha L. Brown, Neile Hicks and Maryland Transit Administration (collectively "Defendants") Motion to Dismiss the Third Amended Complaint (the "TAC"). For the reasons set forth below, Plaintiff requests that this Court deny the Motion to Dismiss in its entirety.

## I.    INTRODUCTION

    This is a police misconduct case in which the Plaintiff asserts that she was detained without legal justification and subjected to excessive force carried out by the Defendants' Harrison-Bailey and Brown. Plaintiff further asserts that Defendant Maryland Transit Administration ("MTA") has/had a custom of allowing unconstitutional actions against citizens of the Maryland, for quite some time.

## II.   <u>FACTUAL ALLEGATIONS</u>

The well-pled allegations in the Plaintiff's Complaint are to be accepted by this Court as true for the purposes of ruling on the Defendants Motions to Dismiss:

During all events described herein, Defendants' Raquel Harrison-Bailey ("Harrison-Bailey") and Neisha L. Brown ("Brown") were police officers employed by the MTA and acting within the scope of that employment, who, upon information and belief reported to Sgt. Hicks. The events complained of herein arose on April 19, 2013. Plaintiff was seated on the subway platform of the Rogers Station in Baltimore City, with her ear phones on listening to music on her cell phone. Plaintiff's cell phone began to ring indicating she was receiving a text message. Plaintiff's ring tone was a popular song that plays until she completes a response to the text message.

Plaintiff proceeded to respond to the text message when she noticed Defendant Harrison-Bailey standing directly in front of her. Plaintiff removed one of the ear pieces and asked the Defendant if she could help her. Defendant Harrison-Bailey, said it was against the law to play music without head phones and there was signage stating as much. Plaintiff indicated that she was not playing music, her phone was actually ringing. Plaintiff further advised that she was within the limits of the law as she was wearing head phones. Defendant Harrison-Bailey insisted that Plaintiff turn off her phone. Plaintiff declined and requested that Defendant Harrison-Bailey, call a supervisor. Defendant Harrison-Bailey declined to do so. Plaintiff called 911 and reported the harassing conduct of Defendant Harrison-Bailey. Defendant Harrison-Bailey proceeded to place Plaintiff under arrest by grabbing her by her sweatshirt hoody and twisting it around her neck. Subsequently, Defendant Brown arrived and aided Defendant Harrison-Bailey with the unlawful arrest of Plaintiff.

After being placed in custody, Plaintiff's clothing was in disarray and her breast and stomach were exposed. Plaintiff requested the Defendants' to fix her clothing before removing her from the subway platform. Defendants' refused and walked Plaintiff thru the station with her private areas exposed to the general public. Three (3) female officers, including the Defendants', escorted Plaintiff to the bathroom to apparently fix her clothing, which merely needed to be pulled down to cover her private areas. Defendants' pushed Plaintiff thru the turnstile took her into the women's bathroom and accosted her, first by tripping her to the floor, punching her in the face and back of the neck and head, stomping and jumping on her leg and ankle. Plaintiff was subsequently criminally charged with, Disorderly Conduct, Failure to Obey Lawful Order of Law Enforcement Officer and Resisting Arrest. On September 16, 2013, the case went to trial in the District Court for Baltimore City. The State entered a *Nolle Prosequi* on the docket. In addition to the physical injuries described herein, Plaintiff Jeffers suffered the following injuries and damages:

a.      Violation of her well-established constitutional rights under the Fourth  and Fourteenth Amendment of the United States Constitution to be free  from an unreasonable search and seizure of her person;

b.      Violation of her constitutional rights under the Maryland Declaration of Rights clearly established and well settled state constitutional rights under the Maryland Declaration of Rights Articles 24 and 26 including, but not limited to: Freedom from the use of excessive, unreasonable, and unjustified force against her person;

c.      Loss of her physical liberty;

d.      Physical pain and suffering;

e.      Emotional trauma and suffering, embarrassment, and mental anguish;

f.      Lost wages and loss of future earning potential;

g.      And has suffered and will continue to suffer economic loss due to the sums of money spent to alleviate the injuries that were inflicted by the Defendant Officers'.

It is alleged that the actions of the Defendant Officers' Harrison-Bailey and Brown violated the following clearly established and well settled federal and state constitutional rights of Plaintiff: a. Freedom from the unreasonable seizure of her person; and b. Freedom from the use of excessive, unreasonable, and unjustified force against her person.

### III.      STANDARD OF REVIEW- MOTION TO DISMISS

Dismissal under Rule 12 is "merely a decision on the pleadings. For that reason, such motions are granted sparingly and with caution." *See Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 511 F.2d 678, 680 (4th Cir. 1975) *rev'd* on other grounds, 425 U.S. 738, 96 S. Ct. 1848, 48 L. Ed. 2d 338 (U.S.N.C. 1976). "Dismissal under Rule 12(b)(6) is appropriate only if a plaintiff fails to state a claim that is plausible on its face." *Owens v. Baltimore City State's Attorney's Office*, 767 F. 3d 379, 396 (4th Cir. 2014). In determining whether to dismiss a complaint pursuant to Rule 12(b)(6), the court must consider the well-pleaded material allegations in the light most favorable to the Plaintiff and accept those factual allegations as true. *Flood v. New Hanover County*, 125 F. 3d 249, 251 (4th Cir. 1997) (citing *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F. 3d 213, 217-18 (4th Cir. 1994)). "A claim has 'facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' To satisfy the standard, a plaintiff must do more than allege facts that show the 'sheer possibility' of wrongdoing. *Owens*, 767 F. 3d at 396 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "'A complaint should not be dismissed…unless it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief.'" *Bing v. General Motors Acceptance Corp.*, 237 F. Supp. 911, 912 (E.S.S.C. 1965) (quoting *Conley v. Gibson*, 355 U.S. 41, 45 (1957). Generally, when a question of fact arises, the question should not be decided on a Motion to Dismiss. *See Hospital Bldg. Co., 511 F.2d at 680.*

In an action for relief pursuant to 42 U.S.C. § 1983, to survive a defendant's motion to dismiss, a plaintiff need only provide "a short and plain statement of the claim showing that [she is] entitled to relief." This Court may dismiss the Plaintiffs' Complaint only if it is clear that no relief could be granted under any set of facts which could be proved consistent with the stated allegations. More specifically, Federal Rule of Civil Procedure 8 merely requires "notice pleading." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160 (1993); *Swierkiewicz v. Soreman NAS*, 534 U.S. 506, 512, 122 S.Ct. 192 (2002). Though at times various courts have attempted to apply a higher standard, the Fourth Circuit has time and time again reiterated the well-settled notice pleading standard. Moreover, in the context of the numerous federal civil rights violations contained in the Plaintiff's Complaint, this Court "must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff[s] would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged. See *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002)(internal quotation marks omitted).

To the extent that it can be argued that this case presents a theory of liability against the Defendants that has not been fully tested, it should not be tested on the pleadings, but after sufficient development of the record. See *Elec. Constr. & Maint. Co., Inc. v. Maeda Pac. Corp.*, 764 F.2d 619, 623 (9th Cir. 1985) and *McGary v. City of Portland*, 386 F.3d

1259, 1270 (9th Cir. 2004) ("the court should be especially reluctant to dismiss on the basis

of the pleadings when the asserted theory of liability is novel or extreme, since it is important

that new legal theories be explored and assayed in the light of actual facts rather than a

pleader's suppositions") (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure:

Civil § 1357); _Kirksey v. R.J. Reynolds_, 168 F.3d 1039, 1040-1 (7th Cir. 1999) ("a claim

should not be dismissed out of hand just because it is so novel that it cannot be fitted into an

existing legal category"); _Baker v. Cuomo_, 58 F.3d 814 (2nd Cir. 1995), vacated and

reversed on other grounds, 85 F.3d 919; _Santara Va. Beach Gen. Hosp. v. LeBeau_. 182

F.Supp.2d 518 (E.D. Va. 2002); _Logiodice v. Trustees of Maine Centr. Inst._,135 F.Supp.2d

199, 205-6 (D. Me. 2001); _Wadja v. R.J. Reynolds Tobacco Co_., 103 F.Supp.2d 29, 36 (D.

Mass. 2000); _Official Comm. Of Unsecured Creditors of Buckhead Amm. Corp. v. Reliance_

_Capital Group. Inc_., 178 B.R. 956, 961 (D. Del. 1994); _JES Props. Inc. v. USA Equestrian._

_Inc_., 2003 U.S. Dist. LEXIS 20633, *26-27 (M.D. Fl. 2003); _Mayes v. Office Depot. Inc_.,

2002 U.S. Dist. LEXIS 27063, *8 (W.D. La. 2002).

## IV.   **ARGUMENT**

### a)   **Md. Transportation Article § 7-702(b) is preempted by federal law.**

MTA is covered by its own statutory waiver of sovereign immunity. (Transportation

Article §7-702). The MTA is self-insured up to the amount of $5 million. It retains excess

liability insurance coverage above $5 million. Claims administration services are provided in

house by the MTA. The Defendant argues that suit against Defendants Harrison-Bailey,

Brown and Hicks, is improper, because Md. Transp Artc. 7-702(b), states that the exclusive

remedy for tort claims is suit against the MTA.

Section 1983 of Title 42 creates a cause of action **against any person who**, acting

under color of state law, abridges a right arising under the Constitution or laws of the United States. The Complaint alleges that the Officers violated Plaintiff's constitutional rights through the use of excessive force. See *Waterman v. Batton*, 393 F.3d 471, 476 (4th Cir. 2005) (explaining that seizure effectuated by excessive force contravenes Fourth Amendment).

Under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690-92 *(1978);* the MTA is liable only for its own illegal acts. See 436 U.S. at 691 (stating that a municipality "cannot be held liable solely because it employs a tortfeasor" (emphasis in original)); see also *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) ("[Municipalities] are not vicariously liable under § 1983 for their employees' actions."). Pursuant to this standard, a municipality is liable under § 1983 if it follows a custom, policy, or practice by which local officials violate a plaintiff's constitutional rights. *Monell*, 436 U.S. at 694. Only if a municipality subscribes to a custom, policy, or practice can it be said to have committed an independent act, the sine qua non of *Monell* liability.

Accordingly, Plaintiff has sued the individual Defendants in their *individual capacities*. It is clear, that Md. Transp Artc. 7-702(b) is *preempted* by 42 U.S.C. 1983, and the court should deny the Defendants Motion to Dismiss on this basis.

### b) The Defendants Argument That Plaintiff Failed to Comply with Md. Transportation Article § 7-702(d) lacks credibility, is without support and was proffered to intentionally mislead the Court into dismissing Plaintiff's meritorious Claims.

The Defendants next argument, likewise unsupported, is that Plaintiff's Complaint should be dismissed, because, as the Defendants characterize, she failed to comply with the requirements of Md. Transportation Article 7-§702(d)(1) which states:

**(d)    A tort claimant may not institute an action under this section unless:**

**(1)    "The claimant submits a written notice of claim to the Administrator or the <u>Administrator's designee</u> within 1 year after the injury to person or property that is the basis of the claim"**

The Defendants correctly noted that the purpose of 7-702(d)(1), is to ensure that the Defendant, MTA, be given time to complete its investigation and then make a determination as to whether it should accept or deny a claimant's claim. The Defendant goes on to allege that Plaintiff "**never provided actual notice to MTA of her proposed claim**", even though the Defendants admitted that Plaintiff sent a purported "**Litigation Hold**" letter to the MTA in May 2015 and subsequently, that the MTA "**had no idea what claim Plaintiff was referring to**", and that ultimately, as a result of not receiving a claim, the <u>**MTA took [n]o**</u> <u>**action**</u>, whatsoever, to investigate the merits of Plaintiff's Complaint, although it was required to, under the statue. In fact, the Defendant proffered to the Court that the MTA has been **[p]rejudiced** by Plaintiff's purported failures and that the MTA "**has absolutely no claims investigative file, nor has it interviewed any witnesses to test the accuracy of Plaintiff's allegations**". Finally, the MTA, in its attempt to aggrandize its argument, characterizes, albeit vaguely, the purported prejudice as "**pellucid**".  Moreover, in its continued tortured effort to bring home its prejudice argument, hook line and sinker; defense counsel, poignantly, indicated that he has been "**scrambling**" to try and put together a "**semblance**" of an investigation[1]. It is for the foregoing reasons, which, according to the Defendants, Plaintiff's claims should be dismissed with prejudice. As will be demonstrated *infra*, the arguments advanced by the Defendants are lacking in merit, amounts to

---

[1] Defense Counsel goes on to admit that no "investigation was done on the claim because no claim was made".

hyperbolized rhetoric and abstruse legal reasoning.

On October 4, 2013, Plaintiff served a "Notice of Claim", including her "Evidence Preservation Notice", respecting the events that have led to the filing of the instant Complaint (**Exhibit A**). It is important to note that the aforementioned notice was served on the Maryland State Treasurer ("MST"), because Md. Transportation Article § 7-702(d) does not define, "MTA Administrator's designee", and thus, out of an abundance of caution, the notice was served on the State of Maryland, utilizing the same procedures in the Maryland Tort Claims Act ("MTCA"). On October 11, 2013, undersigned counsel received notice from Ray Garvey, with the MSTs office, informing counsel that all future correspondence should be directed to The Transit Insurance Group ("TIG"). TIG, within the MTA, manages all claims and liability issues related to the transit operations. Interestingly, Mr. Garvey sent a copy of the notice and Plaintiff's claim to Michael Fullerton (**Exhibit B**). Mr. Fullerton is a longtime Insurance Adjuster with TIG and upon information and belief was the Adjuster assigned to handle the claim of the Plaintiff. To confirm the same, Plaintiff relies on Affidavit of Candace Turner, wherein she outlines the steps she took to verify that Mr. Fullerton worked for the TIG (**Exhibit C**). At the very least, the Defendant, through its agent Mr. Fullerton, had notice of Plaintiff's claims, 5 months 24 days, after the events occurred. More importantly, as enumerated in Plaintiff's Complaint, the Defendant MTA, through Defendants' Harrison-Bailey and Brown, prosecuted the Plaintiff, as a result of the unlawful arrest for having allegedly a loud telephone ring tone (**Exhibit D**). Moreover, Plaintiff was injured during her unlawful arrest and was subsequently transported to the Maryland General Hospital.

It would certainly be reasonable to conclude, at the pleadings stage of this case, that

the Defendant would have had a duty to investigate Plaintiff's injuries, since she was in custody, was not free to leave and was injured as a result of the arrest. It is further reasonable to assume, almost 4 years later, the Defendant would have records pertaining to the injuries, including an incident report, describing what occurred and detailing its investigation. Plaintiff would submit that the Defendant had a duty to investigate, at the very least, the statements supporting the Statement of Probable Cause ("SPC") of Defendant Harrison-Bailey and subsequently signed off on by Defendant Hicks. Moreover, the Defendant had a fiduciary duty, to investigate the use of force, which necessitated the Plaintiff to be transported to the Maryland General Hospital for treatment.  Further, based on the statements in the pleadings, it appears that there will be a *spoliation* issue, given that the Defendants failed to preserve any evidence, did not maintain an investigative, insurance or claim file and has proffered to the Court that they have absolutely **no information** pertaining to Plaintiff's claims, including, performing an investigation to support the SPC, which belies any defense they could raise, that Plaintiff's arrest was anything but unconstitutional.

Unlike the MTCA, the notice provisions of the Md. Transp. Article 7002, are not *unyieldingly rigid*. In order for the Defendants to be successful in their argument regarding prejudice, the Defendant must **"affirmatively"** demonstrate that prejudice, beyond mere conclusory statement. See Md. Transportation Article § 7-702(g):

> **"**Notwithstanding any other provision of this section, unless the Administration **affirmatively shows** that its **defense has been prejudiced** by the **lack of the required notice, a court may allow the action to proceed [even if the written notice of claim was not submitted]**".

The Court should not be persuaded by the Defendants or its counsel's specious argument of prejudice.  Despite the Defendant receiving notice from the State of Maryland

regarding Plaintiff's claims, the Defendant took no action, according to their pleadings, to investigate. Moreover, even having received a subsequent notice from Plaintiff's counsel, which they characterized as a "Litigation Hold Notice", they took no action to investigate or even contact Plaintiff's counsel, electronically, by mail or telephonically, to discuss the basis of the notice, assuming true the Defendants statement that "**they had no idea what claim Plaintiff was referring to**".

Pursuant to Md. Code Ann., State Finance and Procurement article, the State of Maryland Treasurer administers the State's Insurance Program, which includes handling claims pursuant to the Maryland Tort Claims Act ("MTCA"). On November 23, 2016, Joyce Miller, Director of Insurance with the MST confirmed, in writing, that a notification of Plaintiff's claims were sent to Michael Fuller, Transit Insurance Group. (**Exhibit E**)

It is uncontroverted that the Defendants had an abundance of notice regarding Plaintiff's claims, thus, they have failed to show affirmatively, except for conclusory statements, the prejudice required to warrant dismissal of Plaintiff's claims. Such "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule, thus the Court should deny their Motion on this basis.

> **c) Plaintiff's 42 U.S.C. 1983, 1985, and 1988 Claims were timely filed and Relate Back to the Filing of the Original Complaint.**

Defendants argue, without merit, that the Court should dismiss Plaintiff's federal claims, because they were filed beyond the statue of limitations.

Fed.R.Civ.P. 15(c), permits an amended pleading to relate back to the date of the original pleading, when the claim in the amended pleading arose from the same transaction or occurrence as that set forth in the original pleading, or when a new party is joined and it is

not unfair:

> (c) **Relation Back to Amendments.** An amendment of a pleading relates back to the date of the original pleading when-
> (1) . . . .
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or **occurrence** set forth or attempted to be set forth in the original pleading, **or;**
>
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment:
>
> > (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and
> >
> > (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

It is uncontroverted that the Third Amended Complaint ("TAC"), satisfies provision (2) of the 15(C), and that the claims against the Defendants arose out of the same facts set forth in the original pleading. (**See Docket entries 2,3 and 14**) See also _Goodman v. PraxAir, Inc_., 494 F.3d 458, 467 (4th Cir. 2007). The parties were served within applicable time limits(When the party to be brought into the litigation "has been given fair notice of a claim within the limitations period and will suffer no improper prejudice in defending it, the liberal amendment policies of the Federal Rules favor relation-back."Id.(emphasis in original) ).

It is controverted that the events that gave rise to the instant Complaint occurred on April 19, 2013. It is likewise undisputed that Plaintiff filed her timely Complaint on December 31, 2015. Section 1983 does not contain a statute of limitations. Thus, to determine the timely filing of a § 1983 claim, courts borrow the statute of limitations from the most analogous state law cause of action. See 42 U.S.C. § 1988(a). For § 1983 suits, that

cause of action is a personal-injury suit. See _Owens v. Okure_, 488 U.S. 235, 249–50 (1989). Maryland law affords plaintiffs three years to file a personal-injury action. See Md. Code Ann., Cts. & Jud. Proc. § 5-101. Thus a three year limitations period applies to the Plaintiff's claims and Plaintiff has therefore filed her case within three (3) year limitations period.

### 1)  Amendment to Individual Parties

Under _Rule 15(c)(1)(C)_ "an amendment that changes the party against whom a claim is asserted relates **_back_** to the date of the original pleading" if 1) the claim in both the original and amended complaint arise out of the "same transaction"; 2) the party to be brought in by the amendment "received notice of the action such that it will not be prejudiced in maintaining a defense to the claim"; and 3) that party "should have known that it would have originally been named a defendant 'but for a mistake concerning the identity of the proper party.'" _Goodman 494 F.3d 458, 467 (4th Cir. 2007)_ (en banc) (quoting _Fed. R. Civ. P. 15(c)(1)(C)(ii)_). Those requirements are designed to strike a balance between the Federal Rules, which favor resolution on the merits **[*24]** and liberality of amendment, and the competing legislative policies embodied in statutes of **_limitations_**, which generally favor finality. See _id. at 467-68_. The rules allow amendment "for whatever reason" and "do[] not concern [them]sel[ves] with the amending party's particular state of mind except insofar as he made a mistake." _Id. at 469_.

It is clear that Plaintiff claims in her original complaint have not changed and arose from the same transaction. Plaintiff has met the first prong of 15 U.S.C.(c)(1)(C). With regard to the second prong, any new party received notice of Plaintiff's Complaint as evident by the responsive pleading filed by counsel on behalf of all parties. The third prong as also be met, because the MTA is Defendants Harrison-Bailey and Brown's employer, and

Defendant Hicks is the direct Supervisor of the Defendants' and also signed the SPC. There is no prejudice, also given that the Defendants had over three years to investigate the facts of the Complaint.

### 2) Maryland Law support relations back of Plaintiff's Complaint

*Under Rule 15(c)(1)(A),* an amended complaint also may relate back when "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A). The rule "is intended to make it clear that [Rule 15(c)] does not apply to preclude any relation back that may be permitted under the applicable limitations law." Fed. R. Civ. P. 15(c)(1) (1991), 1991 advisory committee notes.3 "Rule 15(c)(1)(A) instructs courts . . . to look to the entire body of limitations law that provides the applicable statute of limitations," not "merely the limitation law's test for relation back." Hogan, 738 F.3d at 518. "If that law affords a more forgiving principle of relation back than the one provided in [Rule 15], it should be available to save the claim." Id. (internal alteration omitted).

The Maryland Rules of Civil Procedure, unlike the Federal Rules, lack an express provision, governing the "relation back" of amendments to prior pleadings. See Md. Rule 2-341 (governing amendments to pleadings). But Maryland courts do, nonetheless, recognize and apply such a precept, see, e.g., *Crowe v. Houseworth*, 272 Md. 481, 485-86 (1974), though it is narrower in scope than its federal counterpart. Maryland caselaw suggests that an amendment relates back to a prior pleading, "so long as the operative factual situation," stated in the amended pleading, "remains essentially the same" as that alleged in the prior pleading. *Crowe*, 272 Md at 485-86. **In other words, "so long as the operative factual situation" remains "essentially the same," a "new cause of action" is not introduced by an amendment which merely sets forth "a new theory" or invokes "different legal**

**principles**." Id   The new theories alleged, arise out of , essentially the same facts and therefore, Plaintiff's TAC relates back to her original complaint.

The Maryland Court of Special Appeals,  expounded upon the doctrine of "relation back" in _Priddy v. Jones_, 81 Md. App. 164, 169-170, 567 A.2d 154 (1989), in which they held:

> "Where the operative factual situation set out in a timely filed preceding declaration remains essentially the same after amendment, the doctrine of relation back may be applied to bring the amended declaration within the limitations period. This is so even if a different cause of action is pled in a subsequent declaration. The Court of Appeals in _Crowe_ presented the modern view: "so long as the operative factual situation remains essentially the same, no new cause of action is stated by a declaration framed in a new theory or involving different legal principles." (citations omitted)".

In other words, merely changing the legal theory does not constitute a new and different cause of action for purposes of the statute of limitations; the material operative facts, not the legal theory, determine the cause of action. Id. at 169-70 (internal citations omitted).

In Crowe, the Court of Appeals adopted the view expressed by Justice Holmes in _New York Central & H.R.R. Co. v. Kinney_, 260 U.S. 340, 346, 43 S. Ct. 122, 67 L. Ed. 294 (1922):

> [W]hen a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, the reasons for the statute of [*642] limitations do not exist, and we are of the opinion that a liberal rule should be applied.

_See also_ Appiah v. Hall, 183 Md. App. 606, 641-42, 962 A.2d 1046, 1066 (2008)

Rule 15 implements the notions that a plaintiff may amend a pleading for whatever reason and that his amendment should be freely allowed. Consistent with this policy, Rule 15(c)(3) articulates an instance when an amendment relates back, referring simply to when an amendment "changes the party or the naming of the party" for whatever reason. The Rule does not concern itself with the amending party's particular state of mind except insofar as he made a mistake; it presumes that the amending party can make the amendment, although it does constrain substantially the type of amendment that may relate back — one that changes a party or

the naming of a party with respect to a claim already asserted. Defendants Motion to Dismiss, on statute of limitation grounds should be denied.

d) **Plaintiff states a claim for Intentional Infliction of Emotional Distress**

Defendant finally argues that the Court should dismiss Plaintiff's well plead emotional distress claims, because, her claims, as alleged, are not conscious shocking as required to support a viable Emotional Distress claim.

A claim of Intentional Infliction of Emotional Distress ("IIED") has four elements: (1) intentional or reckless conduct that is (2) extreme and outrageous and is (3) causally connected to the emotional distress, which is (4) severe. *Manikhi v. Mass Transit Admin.*, 360 Md. 333, 758 A.2d 95, 112, 113 (Md. 2000). This is not an easy claim to establish.

The Maryland Court of Appeals addressed the second element in Harris v. Jones, 281 Md. 560, 380 A.2d 611 (Md. 1977):

[*850]  Whether the conduct of a defendant has been "extreme and outrageous," so as to satisfy that element of the tort, has been a particularly troublesome question. Section 46 of the Restatement [(Second) of Torts, ch. 2, Emotional Distress (1965)], comment d, states that "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." The comment goes on to state that liability does not extend, however:

"to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. [**20]  The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. . . ."

Comment f states that the extreme and outrageous character of the conduct "may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity." The comment continues:

"The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know. It must be emphasized . . . that major outrage is essential to the tort . . . ."

Id. at 614-15. The tort of IIED "is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct . . . of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 326 Md. 663, 607 A.2d 8, 11 (Md. 1992). "[L]iability for the tort of intentional infliction of emotional distress should be imposed sparingly, and its balm reserved for those wounds that are truly severe and incapable of healing themselves." [**21] *Caldor Inc. v. Bowden,* 330 Md. 632, 625 A.2d 959, 963 (Md. 1993) (internal quotation marks omitted). HN15 "The fourth element of the tort 'requires the plaintiff to show that he suffered a severely disabling emotional response to the defendant's conduct.'" Id. at 964 (quoting *Harris v. Jones*, 380 A.2d at 616).

The court is required to accept the facts of the Complaint as true. The Plaintiff's complaint alleges that she was **unlawfully stopped, arrested, with force, walked through the transit station with her "breast exposed", subsequently, taken into a restroom and viciously assaulted** by the Defendants. She was subsequently, tra**nsported to the hospital wherein she was treated for injuries** caused by the Defendants. Moreover, five months later, she was **prosecuted by the Defendants**, wherein her **freedom was in jeopardy**. Maryland permits a recovery for any "physical injury" resulting from the negligence of another regardless of a physical impact. *Green v. Shoemaker*, 111 Md. 69, 73 A.688 (1909). As used in this rule, however, the term "physical" does not have its usual dictionary meaning and a compensable physical injury may be demonstrated by evidence of a distressed mental state. *Vance v. Vance*, 286 Md. 490, 408 A.2d 728 (1979); The limitation on a recovery under this rule of damages is that the emotional injury must be "capable of objective

determination." _Vance v. Vance_, 286 Md. 490, 408 A.2d 728: While mere conclusory statements such as "I was afraid" are insufficient to establish a right to a recovery. See _Hunt v. Mercy Medical Center_, 121 Md. 516, 710 A.2d 362 (1998) ("the evidence must be detailed enough to give the jury a basis upon which to quantify the injury"), corroborating testimony is not required, see _New Summit Associates v. Nistle_, 73 Md.App. 351, 533 A.2d 1350 (1987) (**plaintiff's own testimony that he suffered nervous shock resulting in nausea, diarrhea, and an inability to sleep supported a finding of compensable injury**) nor is the opinion of a medical expert required. Hunt, 121 Md. 516, 710 A.2d 362 (1998), see also _Hoffman v. Stamper_, 385 Md. 1, 867 A.2d 276 (2005) (permitting recovery of non-economic damages for emotional distress resulting from fraudulent home sales practices).

In _Beynon v. Montgomery Cablevision_, 351 Md. 460, 718 A.2d 1161 (1998),the Maryland Court of Appeals has gone so far as to hold it permissible for a jury to infer from nothing more than 71 feet of skid marks, that a decedent killed in a motor vehicle accident suffered fright and/or emotional distress during the period before the collision so as to support an award of emotional distress damages for "pre-impact fright" in a survival action.

Accepting the facts as true, at this stage of the litigation, it cannot be stated that Plaintiff has not stated a claim for Intentional Infliction of Emotional Distress.

### e)  Plaintiff request leave to Amend her Complaint

If the Court believes that there is any ambiguity in Plaintiff's claims, in the interest of justice, Plaintiff request leave to amend her complaint.

Under Fed. R. Civ. P. 15(a), "[a] party may amend its pleading once as a matter of course" either twenty-one days after serving it or within twenty-one days after service of a responsive pleading or a motion under Fed. R. Civ. P. 12(b), (e), or (f). Fed. R. Civ. P. 15(a).

Thereafter, amending a pleading requires "the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires," id., and should deny leave to amend only if amendment "would prejudice the opposing party, reward bad faith on the part of the moving party, or . . . amount to futility," _MTB Servs., Inc. v. Tuckman-Barbee Constr. Co_., No. RDB-12-2109, 2013 U.S. Dist. LEXIS 61540, 2013 WL 1819944, at *3 (D. Md. Apr. 30, 2013); see _Foman v. Davis_, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) (stating that the court also may deny leave if the plaintiff has amended more than  [**11] once already without curing the deficiencies in the complaint); _Laber v. Harvey_, 438 F.3d 404, 426 (4th Cir. 2006) ("Delay alone . . . is an insufficient reason to deny the plaintiff's motion to amend."). Otherwise, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief" and the plaintiff moves to amend, the Court should grant the motion to give the plaintiff "opportunity to test his claim on the merits." _Foman_, 371 U.S. at 182.

## V.   <u>CONCLUSION</u>

The Court must reject the Defendants Motion, which was not proffered with meaningful discussion and for which was proffered without meaningful support. At the pleadings stage, Plaintiff has stated viable claims, and the Court should allow this case to proceed to discovery. Therefore, accepting all of Plaintiff's allegations and facts from public records as true, and construing the Complaint in the light most favorable to the Plaintiff, Plaintiffs sufficiently plead allegations to support her claims and the Court should therefore deny, in its entirety, Defendants Motion to Dismiss.

Respectfully submitted,

**LAW OFFICES OF KIM PARKER, P.A.**

/s/ Kim Parker /s/                            
Kim Parker, Esquire
Federal  Bar No. 23894
2123 Maryland Avenue
Baltimore, Maryland 21218
Office: 410-234-2621
Facsimile: 410-23612
Email: kp@kimparkerlaw.com

*Counsel for Plaintiff  Rye Keisha Jeffers*