IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| RYE'KEISHA JEFFERS | * | |
| v. | * | Civil No. 16-cv-03683-JFM |
| RAQUEL HARRISON-BAILEY, *et al.* | * | |

******

## MEMORANDUM

Plaintiff Rye'Keisha Jeffers brings suit against defendants Raquel Harrison-Bailey, Neisha L. Brown, Sergeant Neile Hicks, and the Maryland Transit Administration, for various torts and constitutional violations stemming from an incident on April 19, 2013.  Now pending is defendants' motion to dismiss all counts in Jeffers' third amended complaint. (ECF No. 21).  The motion is fully briefed, and no oral argument is necessary. *See* Local Rule 105.6.  For the reasons set forth below, the motion is granted in part and denied in part, and Counts 7, 8, 9, 10, 12, and 13 are dismissed.

## BACKGROUND

At the motion to dismiss stage, this court accepts as true the facts alleged in the complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).  Plaintiff Rye'Keisha Jeffers ("Jeffers") "is a natural person residing in Baltimore County, Maryland." (ECF No. 19, ¶ 7).  Defendants Raquel Harrison-Bailey ("Harrison-Bailey") and Neisha L. Brown ("Brown") were police officers employed by defendant Maryland Transit Administration ("MTA") during the events alleged in Jeffers' complaint. *Id.* at ¶ 8.  Defendant Sergeant Neile Hicks ("Sgt. Hicks") supervised Harrison-Bailey and Brown during these alleged events. *Id.* at ¶ 8.

Jeffers alleges that on April 19, 2013, she "was seated on the subway platform of the Rogers Station in Baltimore City . . . listening to music on her cell phone" through her earphones. While at the platform, Jeffers' "cell phone began to ring, indicating she was receiving a text message." *Id.* at ¶ 11. Jeffers' "ring tone was a popular song that play[ed] until she complete[d] a response to the text message." *Id.* at ¶ 12. While responding to the text message, Jeffers alleges she noticed Harrison-Bailey "standing directly in front of her." *Id.* at ¶ 13. Jeffers "removed one of the ear pieces and asked [Harrison-Bailey] if she could help her." *Id.* at ¶ 14. In response, Harrison-Bailey notified Jeffers "it was against the law to play music without head phones and there was signage stating as much." *Id.* at ¶ 15. Jeffers indicated she was not playing music and "further advised that she was within the limits of the law as she was wearing head phones"; despite this, Harrison-Bailey insisted Jeffers turn off her phone. *Id.* at ¶¶ 16-17. Instead of turning off her phone, Jeffers alleges she requested that Harrison-Bailey call her supervisor. *Id.* at ¶ 19. When Harrison-Bailey declined to do so, Jeffers called "911" and "reported the harassing conduct of Defendant Harrison-Bailey." *Id.* at ¶¶ 20.

After this interaction, Jeffers alleges "Harrison-Bailey proceeded to place Plaintiff under arrest by grabbing her by her sweatshirt [] and twisting it around her neck." *Id.* at ¶ 21. Subsequently, "Brown arrived and aided Defendant Harrison-Bailey" with placing Jeffers in custody. *Id.* at ¶¶ 22-23. Jeffers alleges this incident left her clothing in disarray "and her breast and stomach were exposed." *Id.* at ¶ 23. Jeffers further alleges she requested defendants allow her to fix her clothing, but Harrison-Bailey and Brown "refused and walked [Jeffers through] the station with her private areas exposed to the general public." *Id.* at ¶¶ 24-25.

Jeffers alleges she was led to the women's bathroom where three female officers, including Harrison-Bailey and Brown, "accosted her, first by tripping her to the floor, punching

her in the face and back of the neck and head, [and then] stomping and jumping on her leg and ankle." *Id.* at ¶ 27. Subsequently, Jeffers was criminally charged with "Disorderly Conduct, Failure to Obey [the] Lawful Order of [a] Law Enforcement Officer, and Resisting Arrest." *Id.* at ¶ 28. The criminal case "went to trial in the District Court for Baltimore City" on September 16, 2013, where the state "entered a Nolle Prosequi on the docket." *Id.* at ¶¶ 29-30.

On December 31, 2015, Jeffers filed her original complaint in the Circuit Court for Baltimore City against Harrison-Bailey and Brown, in their individual capacities, alleging various torts and violations of the Maryland Declaration of Rights and 42 U.S.C. § 1983. (ECF No. 2; ECF No. 21, p. 1). Jeffers amended her original complaint on May 19, 2016, omitting the federal claims included in her first complaint. (ECF No. 21, p. 1). Jeffers again amended her complaint, filing a second amended complaint on November 2, 2016, where she added the MTA as a defendant, and reasserted the federal claims against all defendants. *Id.* at 1-2. Defendants removed that action to the U.S. District Court for the District of Maryland and responded with a motion to dismiss. *Id.* at 1-2. Jeffers filed a third amended complaint ("TAC") on November 19, 2016, adding several claims and naming Sgt. Hicks as a defendant for the first time. *Id.*

Specifically, against Harrison-Bailey and Brown, Jeffers alleges: false arrest (Count 1); unreasonable seizure pursuant to Article 26 of the Maryland State Declaration of Rights (Count 2); battery (Count 3); false imprisonment (Count 4); unreasonable seizure and excessive force pursuant to § 1983 (Count 6); intentional infliction of emotional distress (Count 10); and Fourth Amendment violations pursuant to § 1983 (Count 11). Against the MTA, Jeffers alleges: a violation of the Maryland State Declaration of Rights for having a "policy custom, or usage" that resulted in the incident (Count 7); a claim for inadequate supervision and discipline under § 1983 (Count 8); and a violation of civil rights under § 1983 for having improper policies or customs

"which caused the violation of Plaintiff rights" (Count 9). Next, against Sgt. Hicks, Jeffers alleges "supervisory liability" pursuant to 42 U.S.C. § 1983 and § 1988 (Count 12). Jeffers also alleges malicious prosecution against all defendants (Count 5). Lastly, against Sgt. Hicks, Harrison-Bailey, and Brown, Jeffers alleges a "conspiracy to violate [her] civil rights" pursuant to 42 U.S.C. 1985 (Count 13).

In response, defendants Harrison-Bailey, Brown, Sgt. Hicks, and the MTA filed this instant motion on November 28, 2016, to dismiss all counts asserted against them. (ECF No. 21).

## STANDARD

Defendants Harrison-Bailey, Brown, Sgt. Hicks, and the MTA filed this motion to dismiss pursuant to Rule 12(b)(6). "[T]he Court's consideration of the 12(b)(6) motion [is] limited to the pleadings and exhibits that are both integral and authentic, or matters of public record." *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 612 (D. Md. 2011). To adequately state a claim under Rule 12(b)(6), a complaint, relying on only well-pled factual allegations, must state at least a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The "mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). In order to determine whether Jeffers' claims have crossed "the line from conceivable to plausible," the court must employ a "context-specific inquiry," drawing on the court's "experience and common sense." *Iqbal*, 556 U.S. at 680. When performing this inquiry, the court accepts "all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The court need not, however, accept unsupported legal allegations, *Revene*

*v. Charles Cnty. Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), nor must it agree with legal conclusions couched as factual allegations, *Iqbal,* 556 U.S. at 678, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009).

## ANALYSIS

Defendants move to dismiss the thirteen counts asserted against them pursuant to Rule 12(b)(6). (ECF No. 21). I address their arguments in turn.

### I.     Timeliness of claims brought pursuant to 42 U.S.C. §§ 1983, 1985, and 1988

Defendants argue they are entitled to dismissal of Jeffers' claims brought pursuant to 42 U.S.C. §§ 1983, 1985, and 1988, because these claims were not timely filed. Below, I address: (a) whether the claims against the MTA and Sgt. Hicks were timely, and (b) whether the § 1985 claim against Harrison-Bailey, Brown, and Sgt. Hicks was timely.

#### A.  *Claims against the MTA and Sgt. Hicks*

Defendants argue Jeffers' federal claims against the MTA and Sgt. Hicks brought pursuant to 42 U.S.C. §§ 1983, 1983, and 1988, are untimely. (ECF No. 21, p. 5-6). Both sides agree a three-year statute of limitations period applies to these claims. (ECF No. 21, p. 5-6; ECF No. 23, p. 12-13). What is in dispute, however, is whether these claims were timely filed given that Jeffers repeatedly amended her complaint, adding and removing claims and parties in each successive amendment.

The alleged events giving rise to this action occurred on April 19, 2013. (ECF No. 19, ¶ 9). Jeffers filed her original complaint on December 31, 2015. (ECF No. 2; ECF No. 32, p. 12). This original filing was timely; it was filed before the three-year limitations period lapsed on April 19, 2016. However, this original filing did not name the MTA or Sgt. Hicks as defendants,

nor did it allege any federal claims against defendants. (ECF No. 21, p. 6). Rather, the claims against the MTA were added in Jeffers' second amended complaint on November 2, 2016, *id.* at 6, and Sgt. Hicks was added as a defendant for the first time in Jeffers' TAC on November 19, 2016, *id.* at 1-2. Therefore, the relevant question is whether these claims against the MTA and Sgt. Hicks, added after the expiration of the limitations period, "relate back" to the timely original complaint.[1] I agree with defendants and find these claims do not relate back.

"In determining whether an amended complaint relates back, we look to Federal Rule of Civil Procedure 15(c)(1)." *See Wilkins v. Montgomery*, 751 F.3d 214, 224 (4th Cir. 2014). Rule 15(c)(1) provides, in relevant part:

> (1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:
> . . .
> > (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
> > (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> > > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> > > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Therefore, as the Fourth Circuit has explained, "an amendment that changes the party against whom a claim is asserted relates back to the date of the original pleading if (1) the claim in the

---

[1] It is unclear from defendants' motions whether they also seek to dismiss federal claims asserted against Harrison-Bailey and Brown on these grounds. In any event, I choose not to dismiss those claims on timeliness grounds. The original, timely complaint contained § 1983 claims against Harrison-Bailey and Brown. And even though Jeffers removed certain claims and added new claims in subsequent amended complaints, I find these § 1983 claims against Harrison-Bailey and Brown still "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

amended complaint *arose out of the same transaction* that formed the basis of the claim in the

original complaint; (2) the party to be brought in by the amendment *received notice of the action*

*such that it will not be prejudiced* in maintaining a defense to the claim; and (3) it should have

known that it would have originally been named a defendant *but for a mistake concerning the*

*identity of the proper party*." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 467 (4th Cir. 2007)

(emphasis added).  Furthermore, "[w]hen an amendment seeks to add a defendant, the focus

turns to the notice to that individual or entity." *Wilkins*, 751 F.3d at 224.  The Supreme Court has

clarified that "[t]he question . . . is not whether [the amending party] knew or should have known

the identity of . . . the proper defendant, but whether [the potential defendant] knew or should

have known that it would have been named as a defendant but for an error." *Id.* (citing *Krupski v.*

*Costa Crociere*, 560 U.S. 538, 548 (2010)).  This "preserve[s] for the new party the protections

of a statute of limitations" and "assure[s] that the new party had adequate notice *within the*

*limitations period* and was not prejudiced by being added to the litigation." *Goodman v. Praxair,*

*Inc.*, 494 F.3d 458, 470 (4th Cir. 2007).

The first of the three requirements, as set forth in *Goodman v. Praxair*, requires the

federal claims against the MTA and Sgt. Hicks to have arisen "out of the conduct, transaction, or

occurrence" alleged in the original, timely complaint.  Assuming this first requirement is met,[2]

the inquiry turns on whether the MTA or Sgt. Hicks "received notice of the action such that

[they] will not be prejudiced in maintaining a defense to the claim," and whether they "should

have known [they] would have originally been named a defendant 'but for a mistake concerning

the identity of the proper party.'" *Goodman*, 494 F.3d at 467.   Jeffers argues the new parties

---

[2] Jeffers has added new facts in her TAC to support these new claims, which were not included
in the earlier, timely complaints.  Although it is unclear if this requirement is met, I will assume
it is and instead focus on the second and third requirements, because it is clearer those
requirements are not met here.

"received notice of Plaintiff's Complaint as eviden[ced] by the responsive pleading filed by counsel on behalf of all parties." (ECF No. 23, p. 13). Jeffers further argues that the MTA and Sgt. Hicks should have known they would have been parties because the "MTA is Defendants Harrison-Bailey and Brown's employer, and Defendant Hicks is the direct Supervisor of the Defendants." *Id.* at 13-14. I disagree with Jeffers.

Jeffers must prove, *inter alia*, that the MTA and Sgt. Hicks had notice such that they would not be prejudiced, *and* that they were left out of the timely complaint by mistake.[3] *See W. Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196, 1200 (4th Cir. 1989) ("In order to have the amendments relate back to the filing of the answers, Bechtel needed to prove notice and mistake."). In *Western Contracting*, a defendant brought a timely counterclaim against the plaintiff corporation for fraud. *Id.* at 1201. Later, the defendant sought to amend the counterclaim, after the limitations period expired, and add counterclaims against the individual employees of the corporation. *Id.* The Fourth Circuit found the counterclaims against the new individual employees did not relate back because these employees did not have sufficient notice of the counterclaim, and because there were no allegations or evidence the individual counter-defendants were "omitted . . . by mistake." *Id.* The same is essentially true here. Jeffers provides no evidence or allegations that the MTA or Sgt. Hicks were on notice of the claims, rather suggesting they must have had notice because they responded to Jeffers' TAC. With that logic, the MTA and Sgt. Hicks would be damned if they responded, and damned if they did not respond. And while it is true that all defendants are represented by the same counsel, this does not necessarily impute notice on the MTA and Sgt. Hicks. *Cf. Goodman*, 494, F.3d at 473-75

---

[3] The "mistake" language in the Fourth Circuit is generally understood as a "shorthand term" for notice, in that "the party to be added must have known of the mistake." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 472 (4th Cir. 2007).

(concluding the notice requirement was met where "Praxair, Inc." was included in a timely complaint, and "Praxair Services, Inc." was added in an amended complaint, because the two companies not only employed the same attorneys, but because they were *also* "parent and subsidiary" companies and "closely related business entities").

More importantly, Jeffers cannot, and does not, suggest the exclusion of the MTA and Sgt. Hicks until after the expiration of the limitation period was a "mistake." Indeed, as defendants correctly contend, "the identity of the MTA was certainly known to Plaintiff," and Jeffers' simply chose not to file suit against the MTA until well after the statute of limitations had run." (ECF No. 26, p. 5). Furthermore, I note the claims asserted against Harrison-Bailey and Brown in the original, timely complaint were asserted against them in their individual capacities, and not their official capacities, which would have converted the action into one "essentially against the governmental entity." *Wren v. Stewart*, No. CIV.A. RDB-13-3756, 2014 WL 4784324, at *5 (D. Md. Sept. 23, 2014). Additionally, there is no evidence suggesting Sgt. Hicks either had notice of the claim within the limitations period, or that Sgt. Hicks knew he was left out of the original complaint because of a "mistake." *See Goodman*, 494 F.3d at 472. Indeed, Jeffers cannot suggest she omitted Sgt. Hicks from her earlier complaints simply because she did not know his identity; "lack of knowledge of the true identity of a party does not qualify as a 'mistake' as that term is interpreted by a majority of circuits, including the Fourth." *Jeanty v. Hustler*, No. GJH-13-1634, 2016 WL 234814, at *7 (D. Md. Jan. 19, 2016) (citing *Barnes v. Prince George's Cty., MD*, 214 F.R.D. 379, 381 (D. Md. 2003)).

Ultimately, the "plaintiff has the burden of locating and suing the proper defendant within the applicable limitations period." *Id.* at 473. Jeffers failed to do so with respect to the MTA and

Sgt. Hicks.  Accordingly, I dismiss the federal counts asserted against the MTA and Sgt. Hicks in Counts 7, 8, 9, 12, and 13.[4]

### B.  *§ 1985 claims against Harrison-Bailey, Brown, and Sgt. Hicks*

Jeffers also alleges the three individual defendants, Harrison-Bailey, Brown, and Sgt. Hicks, violated 42 U.S.C. § 1985 by "act[ing] in concert and conspir[ing] to violate [Jeffers'] federal civil rights to be free from unreasonable seizures and excessive and/or arbitrary force." (ECF No. 19, ¶¶ 94-96).  As discussed, *supra,* this claim is dismissed against Sgt. Hicks. Therefore, the question is whether Harrison-Bailey and Brown are entitled to dismissal of this claim on timeliness grounds.  Federal law authorizes a cause of action under § 1985 if "two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." *Davenport v. Maryland*, 38 F. Supp. 3d 679, 692 (D. Md. 2014) (citing 42 U.S.C. § 1985(3) (2012)).  "In order to establish a sufficient cause of action under § 1985(3), a plaintiff must prove:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Id.* (citing *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)).

Harrison-Bailey and Brown were listed in the original, timely complaint.  Thus, the question becomes whether this § 1985 claim satisfies Fed. R. Civ. P. 15(c)(1)(B) by "ar[ising] out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Here, the earlier-filed, timely complaints never alleged facts suggesting a conspiracy,

---

[4] Section 1983 claims against the MTA fail on additional grounds, discussed in Section II, *infra*. Count 7 is also dismissed on timeliness grounds.

nor ever mentioned the existence of a "conspiracy." *Cf. Jones v. Tozzi*, No.

1:05CV0148OWWDLB, 2006 WL 2472752, at *11 (E.D. Cal. Aug. 24, 2006) (finding § 1985

claims related back to earlier complaint because "[b]oth . . . early complaints mention[ed] the

existence of a "conspiracy").  Rather, the factual allegations that "[d]efendants' also conspired

with other members of the MTA Police Department who were present on the scene to act in an

unlawful manner that would violate the Plaintiff's Constitutional Rights," were added, seemingly

for the first time, in the TAC. (ECF No. 19, ¶ 63).  Furthermore, there is no mention of a § 1985

claim until the TAC.  This is not like *Jones v. Tozzi*, where the court found the § 1985 "claims

now asserted arose out of the conduct alleged in [the] timely-filed complaints." 2006 WL

2472752, at *11.  Rather, the conduct alleged supporting the § 1985 claim was introduced for the

first time in Jeffers' TAC.  Accordingly, I find defendants are entitled to dismissal of the § 1985

claim in Count 13.[5]

## II.      § 1983 Claims against the MTA

In addition to the timeliness issues, discussed *supra*, the MTA is also entitled to dismissal

of Jeffers' § 1983 claims against it on additional grounds.  Specifically, "the Eleventh

Amendment bars suits directly against states and state agencies," and "courts have implied that a

state agency is not a 'person' able to be sued under § 1983." *Weide v. Mass Transit Admin.*, 628

F. Supp. 247, 251 (D. Md. 1985); *Quern v. Jordan*, 440 U.S. 332, 345 (1979) (dicta); *see also*

*Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor

its officials acting in their official capacities are 'persons' under § 1983.").  Despite this, Jeffers

---

[5] Defendants did not move to dismiss this count on grounds that Jeffers did not sufficiently plead
a § 1985 claim.  To survive a motion to dismiss, a plaintiff alleging conspiracy under Section
1985(3) must "plead specific facts in a nonconclusory fashion." *Davenport v. Maryland*, 38 F.
Supp. 3d 679, 692 (D. Md. 2014) (citing *Gooden v. Howard Cnty.*, Md., 954 F.2d 960, 970 (4th
Cir.1992)).  Although this claim seems be pled in a "conclusory fashion," I do not address this
argument.

contends the MTA is still liable, under *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978), because it "follow[ed] a custom, policy, or practice by which local officials violate[ed] a plaintiff's constitutional rights," and for failing to properly supervise and discipline employees. (ECF No. 23, p. 7). This argument fails for two reasons.

First, under *Monell*, a *local governing body or municipal government* can be sued directly under § 1983 if "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell*, 436 U.S. at 692). But the MTA is an arm of the state, and not a local or municipal body. Therefore, Jeffers cannot bring a claim against the MTA under *Monell*.

Second, even if Jeffers could bring her inadequate supervision and training claim against the MTA, she would have to prove the MTA took an "action pursuant to official municipal policy of some nature [that] caused a constitutional tort." *Monell*, 436 U.S. at 692. Although the Supreme Court has explicitly held merely employing a tortfeasor cannot expose a municipality to § 1983 liability, *id.*, it has also acknowledged that "a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). But, "[t]o satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). "Deliberate indifference is a stringent standard of fault," that generally requires "proof that a municipal actor" had "actual or constructive notice" that training programs were inadequate, and "chose to retain that program." *Id.* "A less stringent standard of fault for a failure-to-train claim 'would result in *de facto respondeat superior* liability on municipalities[.]'"

*Id.* at 62 (citing *City of Canton,* 489 U.S. at 392). Jeffers has pled no such facts here. Although she claims "[i]t was the policy and/or custom of MTA to inadequately and improperly investigate warrantless arrests, citizen complaints of police misconduct, and unlawful warrantless arrests and acts of misconduct were instead tolerated by MTA," she cites no relevant facts for these conclusions.[6] The court need not accept these unsupported legal allegations, *Charles Cnty. Comm'rs,* 882 F.2d at 873, nor must it agree with any conclusory factual allegations devoid of any reference to actual events, *Hirst,* 604 F.2d at 847.

The MTA is not a *local* government entity. Therefore, the § 1983 claims must be dismissed against it. Even if the MTA was able to be sued under § 1983, however, Jeffers has not pled sufficient facts to support these two counts. Accordingly, the MTA is entitled to dismissal of Counts 8 and 9 in Jeffers' TAC.

### III.    Claims against individual defendants

Jeffers also alleges various claims against individual defendants Harrison-Bailey, Brown, and Sgt. Hicks. Defendants move to dismiss these claims on various grounds, and I address their arguments in turn.

#### A.  Maryland torts and compliance with Md. Transportation Article § 7-702

Defendants argue Jeffers failed to comply with Md. Transportation Article § 7-702, and therefore her state tort claims should be dismissed. The statute reads, in relevant part:

> (a) In general: Subject to the provisions of this section, *the Administration is liable for its contracts and torts and for the torts of its officers, agents, and employees in connection with the performance of the duties and functions* of the Administration under this title.

---

[6] In an "Introductory Statement," Jeffers mentions the Department of Justice Civil Rights Division made certain findings regarding the Baltimore City Police Department ("BCPD"). (ECF No. 19; ¶ 5). However, these findings do not pertain to the MTA, but rather the BCPD, and are therefore irrelevant to the analysis.

> (b) Suit against the Administration as exclusive remedy: *The exclusive remedy for a breach of contract or for a tort* committed by the Administration, its officers, agents, or employees *is a suit against the Administration*. No execution may be levied on any property of this State or of the Administration.

Md. Code, Transp. § 7-702 (a)-(b) (emphasis added). This court has previously stated that "§ 7–702 is a general waiver of sovereign immunity for the MTA," *Collier v. Nesbitt*, 558 A.2d 1242, 1243 (Md. Ct. Spec. App. 1989) (citing *Weide v. Mass. Transit Admin.,* 628 F.Supp. 247, 250 (D.Md.1985)), and that it "unequivocally states that a suit against the Administration is the '*exclusive'* remedy for a tort committed by MTA employees while performing their duties*.*" *Id.* (emphasis in original).

Counts 1-5 and Count 10 allege various Maryland state law torts against the individual defendants in connection with the performance of the[ir] duties, including, *inter alia*, false arrest, battery, and false imprisonment. Defendants contend these counts should be dismissed because Jeffers "filed this action against each of the three employees directly," when she should have instead filed this action against the MTA, per § 7-702(b). (ECF No. 21, p. 3-4). However, defendants also argue in their motion to dismiss that Jeffers has alleged defendants "committed [these] torts against her . . . *in the scope of their employment with MTA.*" *Id.* (emphasis added). What defendants fail to realize is that an action brought against these individual defendants, in their official capacity and within the scope of their employment, is an action "essentially against the governmental entity." *Wren v. Stewart*, No. CIV.A. RDB-13-3756, 2014 WL 4784324, at *5 (D. Md. Sept. 23, 2014). Indeed, as the Supreme Court has explained:

> Official-capacity suits . . . generally represent [] another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity.

*Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (emphasis in original) (internal citations omitted) (internal quotation marks omitted).  Although these counts were brought against the three individuals, and not the MTA as § 7-702(b) instructs, these counts were brought against the individuals in their official capacities; accordingly, I do not dismiss these counts based solely on this argument.

Jeffers' claims, however, must also comply with additional procedural requirements listed in § 7-702(d), which states:

> (d) A tort claimant may not institute an action under this section unless:
> (1) The claimant submits a written notice of claim to the Administrator or the Administrator's designee within 1 year after the injury to person or property that is the basis of the claim;
> (2) The Administrator or the Administrator's designee denies the claim; and
> (3) The action is filed within 3 years after the cause of action arises.

Md. Code, Transp. § 7-702(d).  The alleged events giving rise to this action occurred on April 19, 2013. (ECF No. 19, ¶ 9).  Therefore, written notice should have been submitted to the MTA "Administrator or the Administrator's designee" by April 19, 2014. *Id.*   Regarding the notice requirement, both parties agree the purpose is to provide the MTA "with an opportunity to investigate the claim made against it and to make a determination as to its potential liability and exposure." (ECF No. 21, p. 5; ECF No. 23, p. 8).   Defendants argue they are entitled to dismissal of these counts because Jeffers failed to comply with this notice requirement; Jeffers counters, however, that she did comply with the requirement.

Jeffers provided an original "Notice of Claim" on October 4, 2013. (ECF No. 23, p. 9, ECF No. 23-3, Ex. A).  This notice would have been timely if it had been sent to the MTA "Administrator or the Administrator's designee," but it was incorrectly sent to the Maryland State Treasurer ("MST") in accordance with the Maryland Tort Claims Act ("MTCA"). (ECF

No. 23, p. 9). Subsequently, Jeffers received word from MST on October 11, 2013, that "MTA claims are not subject to the Maryland Tort Claims Act," and instructed Jeffers to "direct future correspondence" to the Transit Insurance Group ("TIG"). (ECF No. 23, p. 9; ECF No. 24-4, Ex. B).[7] Importantly, MST noted they were providing a courtesy copy of this correspondence to "Michael Fullerton," an insurance adjuster at TIG. Defendants, however, allege "neither Mr. Fullerton nor the MTA has a copy" of this notice. (ECF No. 26, p. 4). Therefore, it remains disputed whether the MTA ever actually received Jeffers' notice of claim.

Ultimately, I conclude whether the MTA actually received this notice to be somewhat irrelevant. Under § 7-702(g), "unless the Administration affirmatively shows that its defense has been prejudiced by the lack of the required notice, *a court may allow the action to proceed* even if the written notice of claim was not submitted." Md. Code, Transp. § 7-702(g). Here, even assuming MST did not forward the notice to Mr. Fullerton, the MTA has not met the burden of "affirmatively show[ing] that its defense has been prejudiced by the lack of the required notice." *Id.* Defendants argue they have been prejudiced because "no investigation [has been] undertaken," and as a result, counsel is "scrambling to try to put together the semblance of an investigation." (ECF No. 14). But, as Jeffers points outs, the MTA should have an incident report, it can review the Statement of Probable Cause supporting Jeffers' arrest, and it can still interview the individual defendants regarding the incident. Accordingly, I conclude that either: (1) Jeffers complied with § 7-702(d) and the MTA had, or should have had, notice of the claim,

---

[7] Although this exhibit was provided in Jeffers' Response brief, the court can consider "pleadings and exhibits that are both integral and authentic, or matters of public record" when deciding a 12(b)(6) motion. *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 612 (D. Md. 2011).

or (2) the MTA has failed to "affirmatively" show that it's defense has been prejudiced at this state of litigation.[8]  Therefore, I do not dismiss Counts 1-5 and Count 10 on these grounds.

### B.  Intentional Infliction of Emotional Distress (Count 10)

Jeffers' TAC alleges intentional infliction of emotional distress ("IIED") against Harrison-Bailey and Brown. (ECF No. 19, ¶¶ 81-83).  To plausibly plead a claim for IIED, Jeffers must allege: "(1) intentional or reckless conduct that is (2) extreme and outrageous and is (3) causally connected to the emotional distress, which is (4) severe." *Seghetti v. Flagstar Bank, FSB*, No. CV ELH-16-519, 2016 WL 3753143, at *4 (D. Md. July 13, 2016) (citing *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 759 (D. Md. 2015)); *see also Harris v. Jones*, 281 Md. 560, 566, 380 A.2d 611, 614 (1977).  "To survive a motion to dismiss, plaintiffs must have 'pled and proved with specificity' each element of the tort." *Id.* (citing *Arbabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462, 466 (D. Md. 2002)).

Defendants argue the second and fourth elements of Jeffers' IIED claim are not satisfied because the alleged conduct was not sufficiently "outrageous" and the emotional distress was not sufficiently "severe."  Regarding the second element, the defendants' conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Seghetti*, 2016 WL 3753143, at *4 (citing *Khalifa v. Shannon*, 945 A.2d 1244, 1254 (Md. 2008)). And regarding the fourth element, a plaintiff must show she "suffered a severely disabling

---

[8] Certainly, if the MTA can prove it did not receive notice, and can affirmatively show its defense has been prejudiced as a result, I can reconsider this point.  To date, however, MTA has provided no facts to suggest its defense has been actually prejudiced aside from general allegations it cannot defend itself because "no investigation [has been] undertaken" thus far. (ECF No. 21, p. 5).  I also note the MTA's argument that "lay witnesses to the event . . . have now become lost to the MTA," is not highly persuasive. *Id.*  Indeed, if Jeffers had provided timely notice at the one-year mark, it is equally likely these lay witnesses would be just as difficult to locate.

emotional response to the defendant's conduct," and that "the distress inflicted is so severe that no reasonable [woman] could be expected to endure it." *Seghetti*, 2016 WL 3753143, at *4 (citing *Harris v. Jones*, 380 A.2d 611, 616 (Md. 1977)).

As an initial matter, I acknowledge that Maryland courts have emphasized the tort of IIED "is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct." *Kentucky Fried Chicken Nat. Mgmt. Co. v. Weathersby*, 326 Md. 663, 670, 607 A.2d 8, 11 (1992). Furthermore, the "general rule that emerges from caselaw" is that "the requirements of the rule are rigorous, and difficult to satisfy." *Id.* citing W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 12, p. 60–61 (5th ed. 1984). Here, Jeffers alleges she was:

> unlawfully stopped, arrested with force, walked through the transit station with her "breast exposed," . . . taken into a restroom and viciously assaulted by the Defendants[,] . . . transported to the hospital wherein she was treated for injuries caused by the Defendants[, and] . . . prosecuted by the Defendants, wherein her freedom was in jeopardy.

(ECF No. 23, p. 17). Even assuming this alleged conduct satisfies the second element, Jeffers' IIED claim fails because she has not "pled and proved with specificity," *Arbabi*, 205 F. Supp. 2d at 466, facts to satisfy the fourth element of her claim. Indeed, the alleged emotional distress must be "so severe that no reasonable [person] could be expected to endure it." *Seghetti*, 2016 WL 3753143, at *4 (citing *Harris*, 380 A.2d at 616). "Put another way, the ensuing distress 'must leave one unable to function and unable to tend to necessary matters.' *Id.* (citing *Jones v. Family Health Centers of Baltimore, Inc.*, 135 F. Supp. 3d 372, 383 (D. Md. 2015)). This Court has previously dismissed IIED claims "even where a plaintiff 'suffered severe bouts of stress, anxiety, depression, sleeplessness, and ha[d] developed shingles, constant aches and pains, and uncontrollable clenching of his jaw.'" *Id.* (citing *Williams v. Wicomico Cty. Bd. of Educ.*, 836 F. Supp. 2d 387, 399 (D. Md. 2011)); *see also Moniodis v. Cook*, 494 A.2d 212, 219 (Md. Ct. Spec.

App. 1985), *superseded by statute on other grounds* (plaintiffs who lost sleep, suffered from hives, started smoking more, and suffered from emotional distress did not prove the fourth element of IIED because they continued to manage their lives).

Here, Jeffers alleges she suffered "[e]motional trauma and suffering, embarrassment, and mental anguish," as a result of the incident. (ECF No. 19, ¶ 31). There are no additional allegations regarding the emotional distress she suffered. Although worthy of sympathy if true, these allegations do not satisfy Jeffers' burden at this stage of litigation because Jeffers has not alleged any facts suggesting she was "unable to function and attend to daily activities as a result of defendants' action." *Seghetti*, 2016 WL 3753143, at *4. Accordingly, Jeffers has not plausibly demonstrated she suffered "severe emotional distress, as the term has been defined by Maryland law," *id.*, and I dismiss Jeffers' IIED claim in Count 10.

### C. § 1983 claims against Harrison-Bailey and Brown

Jeffers also alleges two § 1983 claims specifically against Harrison-Bailey and Brown: (1) unreasonable seizure and excessive force (Count 6); and (2) various Fourth Amendment violations (Count 11). Defendants seemingly argue, although it is somewhat unclear, that these claims should also be barred because § Md. Code, Transp. § 7-702 (b) states the "exclusive remedy for a breach of contract or for a tort committed by the Administration, its officers, agents, or employees is a suit against the Administration." (ECF No. 21, p. 3-4). Furthermore, defendants argue these claims should be dismissed because they were not brought against the individuals in their individual capacity, but rather in their official capacity, because Jeffers stated "during all events herein, [defendants] were police officers employed by the MTA and acting within the scope of that employment." Jeffers counters, however, that she has "sued the individual Defendants in their *individual capacities*," and that "Md. Transp. Art. 7-702(b) is

preempted by 42 U.S.C. 1983, and the court should deny the Defendants Motion to Dismiss on this basis." (ECF No. 23, p. 7). Although neither party is entirely correct, I deny the motion to dismiss these two counts for the reasons set forth below.

As an initial matter, I disagree with defendants' assertion that *Weide v. Mass Transit Administration* stands for the proposition that plaintiffs cannot bring a § 1983 claim against defendants because § 7-702 bars such a claim. 628 F. Supp. 247 (D. Md. 1985). In *Weide*, a plaintiff brought a federal Title VII claim and a § 1983 claim against the MTA alleging employment discrimination. *Id.* The court ultimately ruled that the plaintiff could not bring a § 1983 claim for "the exact same conduct which she claims violates Title VII" because Title VII provided an exclusive remedy in the situation. *Id.* at 251-52. The discussion of § 7-702 in *Weide* does not pertain to whether § 7-702 precludes § 1983 claims, as defendants suggest, but rather whether § 7-702 constitutes a waiver by Maryland of its sovereign immunity in federal court. *Id.* at 250-51. Therefore, the discussion from *Weide* is of no import here regarding defendants' motion to dismiss these counts.[9] Rather, I find Jeffers § 1983 claims, although based on similar conduct as her Maryland tort claims, are not precluded by § 7-702 because, *inter alia*, they allege constitutional violations. Indeed, accepting defendants' argument would preclude *all* § 1983

---

[9] The discussion in *Weide*, rather, deals with immunity, and this Court has held, "section 7–702 does not constitute a waiver of Eleventh Amendment immunity so as to subject MTA to suit in *federal court*." *Beckham v. Nat'l R.R. Passenger Corp.*, 569 F. Supp. 2d 542, 550 (D. Md. 2008) (emphasis in original). Any claims brought pursuant to § 7-702, however, are properly before this Court because plaintiff filed her complaint in the Circuit Court of Maryland for Baltimore City, and the case was removed to federal court by the *defendants*. "It has long been established that a party waives its sovereign immunity under the Eleventh Amendment by appearing in federal court voluntarily to adjudicate the merits of a claim." *Id.* at 552. The Supreme Court has specifically held that a state's decision to remove a case from state court to federal court amounts to waiver. *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 620 (2002). Because defendants could have been sued in Maryland state court, were sued there initially, and chose to remove to this case to federal court, none of Jeffers' claims against MTA can fail on these grounds.

claims against MTA police officers. Accordingly, I find Jeffers can bring these claims and do not dismiss on these grounds.

Next, the parties disagree on whether these claims were brought against Harrison-Bailey, Brown, and Sgt. Hicks in their individual capacities or their official capacities. The distinction is critical because "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, if the claims were brought against the defendants in their official capacities, defendants would be entitled to dismissal. In making my decision, I first note that "[u]nder the Supreme Court's opinions, a § 1983 action against a government officer or employee does not become an official capacity action simply because of the labels used by the parties[.]"[10] *Ritchie v. Donnelly*, 597 A.2d 432, 440 (Md. 1991). Furthermore, as the Maryland Court of Appeals explained in *Ritchie v. Donnelly*, the key to determining whether a defendant acted in her official or individual capacity *is not* whether the actions were taken during "the scope of employment." *Id.* at 442. Indeed, "[m]ost actions taken by a government officer or employee 'under color of' law, governmental custom[,] or usage[,] will be actions in the scope of employment." *Id.* Rather, the key is whether the actions were taken in accord with, or "contrary to[,] the law and policy of the State of Maryland." *Id.* at 443. Therefore, if the defendants' actions were contrary to any "government law, policy or custom," the § 1983 claims are individual capacity claims. *Id.*

---

[10] In their briefs, the parties predominantly focus on language and labels Jeffers uses in her TAC in order to argue whether the claims were brought against defendants in their individual or official capacities. As *Ritchie* reveals, however, these "labels" are not dispositive. Indeed, Jeffers' TAC is not helpful regarding this issue, stating she is suing defendants "in their individual and official capacities," but also alleging the "violations and torts were committed during the course and scope of the [individual defendants'] employment with the MTA." (ECF No. 19, ¶ 2). Accordingly, I will not rely on these "labels," and instead follow the case law.

Conversely, if the actions were in accord with Maryland law or policy, the § 1983 claims become official capacity claims. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).

Here, Jeffers' § 1983 allegations in Counts 6 and 11 do not allege any "government law, policy or custom played a part in the [individual defendants'] alleged unconstitutional acts." *Id.* The fact that these defendants were "acting within the scope of her employment does not undermine the validity of the plaintiff's § 1983 claims as individual capacity claims." *Id.* Accordingly, I find these claims to be individual capacity claims, and defendants are not entitled to dismissal on these grounds.[11]

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss Jeffers' TAC (ECF No. 21) is granted in part and denied in part. Specifically, Counts 7, 8, 9, 10, 12, and 13 are dismissed against all defendants. A separate order follows.


 3/21/2017                                              /s/
Date                                                J. Frederick Motz
                                                    United States District Judge

---

[11] These individual capacity claims are, in some ways, related to the § 1983 counts alleged against the MTA, discussed *supra*. I dismissed those counts against the MTA because, *inter alia*, Jeffers did not allege the MTA took an "action pursuant to official municipal policy of some nature [that] caused a constitutional tort." *Monell*, 436 U.S. at 692. Relatedly, I find the allegations against Harrison-Bailey and Brown are of the individual capacity variety, and therefore do not dismiss these counts.