# FELICIA DANTZLER

3701 Edgewood Road
Baltimore, Maryland 21215
443-577-6098
Email: feliciadantzler50@gmail.com

June 23, 2017

<u>**VIA ELECTRONIC MAIL**</u>
Kim Parker, Esquire
The Law Offices of Kim Parker, P.A.
2123 Maryland Avenue
Baltimore, Maryland 21218

Re: <u>**Rye Keisha Jeffers vs. Harrison-Bailey**</u>

Dear Mrs. Parkar:

Please find my professional opinion regarding the aforementioned case. Please contact me with any questions and/or concerns.

<u>**SUMMARY OF FINDINGS**</u>

Although the factual record and discovery in this case are not necessarily complete, and although I reserve the right to supplement and adjust my findings in light of newly discovered evidence, I can state to a reasonable degree of professional certainty that, based upon the information currently available, the arrest and subsequent use of force was inconsistent with generally accepted standards and norms in police practices and that it was an unreasonable and unjustified use of force.

*<u>MATERIAL, EVIDENCE AND INFORMATION CONSIDERED</u>*

During the course of my evaluation, I reviewed and considered the following materials:

- **Plaintiff's Complaint**
- **Statement of Probable Cause**
- **Medical Records/Bills from Maryland General Hospital**

1

- **Various policies and procedures from Maryland Transit Administration Police Department.**
- **Consent Order Baltimore City Police Department and the US Department of Justice**
- **Charging Documents**
- **Docket Report**
- **Dismissal**
- **Daily Run Sheets**
- **Statement of Probable Cause**
- **Defendant Trial Summary**
- **Pre-Trial Docket**
- **Citation**
- **Charge Summary**
- **Plaintiff's response to Discovery**
- **Defendant's response to interrogatories**

## BACKGROUND AND QUALIFICATIONS

My background and qualifications are set forth in the attached C.V.

My opinions are based in part on my training and professional experience. I have more than 15 years of experience in law enforcement and 10 years as an Investigator with the District of Columbia Alcoholic Beverage Regulation Administration ("ABRA"). As you will see, my background includes extensive experience in training on the proper use of force practices all across the nation.

I am a fifteen year (15) veteran of the District of Columbia Metropolitan Police Department ("MPD"). I was hired on November 19, 1990, and I left active service on December 4, 2004.

My career included seven years as a Field Training Officer, two years as a Special Investigations Officer (Covert), and six years as a Acting Police Sergeant. I left the MPD holding a certificate of training from the Metropolitan Police Department.

As a Field Training Officer, provided thorough training, guidance, and evaluation of police officers. Conducted complete investigations of crimes involving juveniles and adults, crimes against persons and property, and crimes involving vice, gaming, and narcotics violations as assigned. Additionally, I monitored use of force. Performed undercover and surveillance activities as assigned. Prepared investigative reports and case information, provide evidence and testimony in court. Answered questions from the public concerning local and State laws, procedures, and activities of the Department. Collected , preserved and maintain evidence and property found that is involved with suspected crimes. Developed and maintain good relationships with the public, including informants and contacts which were helpful in criminal investigations. Performed related duties as assigned.

In my fifteen year (15) years with MPD, I have thousands of hours in public contact, hundreds of arrest, including for assaults, thefts, disturbing the peace, disorderly conduct, robberies,  fighting, prostitution, weapons, narcotics, loud and boisterous, traffic violations, felony and misdemeanors.

In my years with MPD I had a record of excellence for utilizing proper tactics and training. Moreover, I the Georgetown Business and Professional Association awarded me with a prestigious public service award for my dedication to the pursuit of justice and safety. I have testified in numerous hearings and trials, before Courts in the District of Columbia and various administrative agencies.

Since leaving the MPD, I have over ten (10) years as ABRA, as a sworn Investigator.  In my capacity as an Investigator, I have thousands of hours of public contact; I have conducted thousands of investigations and inspections of businesses in the District of Columbia. I have also on occasion, conducted joint investigations with the U.S. Drug Enforcement Agency ("DEA"),

MPD and other state and local agencies. I have testified before the Alcoholic Beverage Board hundreds of times and have attended facts findings regarding my investigations. In addition, in my capacity as Investigator I have investigated assaults, rapes, serious bodily injury and other matters related to the businesses.

## EVALUATION OF EVIDENCE

MTA SOP 5 Arrests 5.1.3. states that "**MTA Police Personnel will not mistreat persons who are in custody**". 5.1.7 states that "**An Officer must never make an arrest because they feel that their dignity was impaired by derogatory remarks made by a citizen. Arrest made simply to show authority or to vent personal feelings will not be TOLERATED**" . Moreover, 5.1.8 states in relevant part that "**All officers should bear in mind that frequently a polite warning to persons guilty of very MINIOR offenses will be sufficient, and that arrest in such cases should not be made unless the violations are willful and repeated**". 5.1.10 states "**In affecting an arrest, force shall be used only when necessary to assure the custody of the prisoner or to overcome any resistance. Officers are not justified in striking or arresting a person who merely objects to their proper performance of duty, although a person actually interferes with such performance of duty may be arrested. Officers should not strike a prisoner who merely holds back, but who is not otherwise resting arrest. Officers must only use the minimum amount of force necessary to effect and maintain the arrest…..Officers must maintain control of their temper and never allow themselves to be provoked into using rude, racial, or obscene language. The actions of a prisoner are not just cause for an officer to sacrifice their professionalism**". 5.4.1 states that "**All persons arrested by the MTA Police Force will be properly and safely transported and processed in compliance with current policy.** 5.42.1 "**If a prisoner becomes injured while in police custody, qualified medical personnel will be called to treat the individual.**

I also reviewed MD Code, Transportation, 7-705, identified by Defendant Harrison-Bailey in her Answer to Plaintiff's Interrogatories 7. Specifically, the relevant portion of states that: **§7–705(b)  It is unlawful for any person to engage in any of the following acts in any transit vehicle or transit facility, designed for the boarding of a transit vehicle, which is owned or controlled by the Administration or a train owned or controlled by the Administration or operated by a railroad company under contract to the Administration to provide passenger railroad service:**

(1)  Expectorate;

(2)  Smoke or carry a lighted or smoldering pipe, cigar, or cigarette;

(3)  Consume food or drink, or carry any open food or beverage container;

(4)  Discard litter, except into receptacles designated for that purpose;

**(5)  Play or operate any radio, cassette, cartridge, tape player, or similar electronic device or musical instruments, unless such device is connected to an earphone that limits the sound to the hearing of the individual user;**

(6)  Carry or possess any explosives, acids, concealed weapons or other dangerous articles;

(7)  Carry or possess any live animals, except seeing–eye animals and hearing–ear animals properly harnessed and accompanied by a blind person or a deaf person, and small animals properly packaged;

(8)  Board any transit vehicle through the rear exit door, unless so directed by an employee or agent of the Maryland Transit Administration;

(9)  Urinate or defecate, except in restrooms;

(10)   Fail to move to the rear of any transit vehicle when requested to do so by the operator or a police officer;

(11)   Fail to vacate a seat designated for the elderly or handicapped when requested to do so by the transit vehicle operator, train conductor, or a police officer; or

(12)   Except by contract with the Administration, solicit the purchase of any goods or services.

**Facts by the Plaintiff**

The following facts were gleaned from Plaintiff's Complaint.

Plaintiff was seated on the subway platform of the Rogers Station in Baltimore City, with her ear phones on listening to music on her cell phone. Plaintiff's cell phone began to ring indicating she was receiving a text message. Plaintiff's ring tone was a popular song that plays until she completes a response to the text message.

Plaintiff proceeded to respond to the text message when she noticed Defendant Harrison-Bailey standing directly in front of her. Plaintiff removed one of the ear pieces and asked the Defendant if she could help her. Defendant Harrison-Bailey, said it was against the law to play music without head phones and there was signage stating as much. Plaintiff indicated that she was not playing music, her phone was actually ringing. Plaintiff further advised that she was within the limits of the law as she was wearing head phones. Defendant Harrison-Bailey insisted that Plaintiff turn off her phone. Plaintiff declined and requested that Defendant Harrison-Bailey, call a supervisor. Defendant Harrison-Bailey declined to do so. Plaintiff called 911 and reported the harassing conduct of Defendant Harrison-Bailey. Defendant Harrison-Bailey proceeded to place Plaintiff under arrest by grabbing her by her sweatshirt hoody and twisting it around her

neck. Subsequently, Defendant Brown arrived and aided Defendant Harrison-Bailey with the unlawful arrest of Plaintiff.

After being placed in custody, Plaintiff's clothing was in disarray and her breast and stomach were exposed. Plaintiff requested the Defendants' to fix her clothing before removing her from the subway platform. Defendants' refused and walked Plaintiff thru the station with her private areas exposed to the general public. Three (3) female officers, including the Defendants', escorted Plaintiff to the bathroom to apparently fix her clothing, which merely needed to be pulled down to cover her private areas. Defendants' pushed Plaintiff thru the turnstile took her into the women's bathroom and accosted her, first by tripping her to the floor, punching her in the face and back of the neck and head, stomping and jumping on her leg and ankle. Plaintiff was subsequently criminally charged with, Disorderly Conduct, Failure to Obey Lawful Order of Law Enforcement Officer and Resisting Arrest. On September 16, 2013, the case went to trial in the District Court for Baltimore City. The State entered a *Nolle Prosequi* on the docket.

## MARYLAND STATUES

§ 10-201. Disturbing the public peace and disorderly conduct.

§ 9-408. Resisting or interfering with arrest.

## FEDERAL STATUE

Fourth Amendment of the Constitution

## OPINION

The statue applicable to the stop (§7–705(b)(5) ) which identifies the types of devices that are considered prohibited. It also identifies similar electronic devices. Black law dictionary defines similar as "**a partial resemblance only; but it is also often used to denote sameness in all essential particulars**". When the Defendant stopped and detained the Plaintiff, she had a

duty to investigate the source of the music and to ensure that the alleged violation met the elements of the statue in which she relied on to unlawfully detain the Plaintiff. Had the Defendant investigated, she would have discovered that a cell phone could not reasonably be similar to a radio, cassette, cartridge or tape player. A cell phone is defined as "any **portable telephone which uses cellular network technology to make and receive calls**". It is without dispute that a radio, cassette, cartridge or tape player, is incapable of making phone calls, thus, in my opinion they are not similar. The Plaintiff had her earplugs in which would have complied with the spirit of 7-705. Further the Defendant ordering the Plaintiff to turnoff her phone amounts to an unlawful order because as stated above, the Plaintiff had not violated any law.

Based on the documents reviewed in writing this opinion, my experience and training, I have concluded that the Defendant did not have probable cause to arrest the Plaintiff. The Defendant failed to act in a reasonable and prudent manner. The MTA's own SOPs considers this purported violation to be MINOR where a verbal warning would have been sufficient.

The Defendant clearly became upset when the Plaintiff requested to speak with her supervisor. In my opinion, the Defendant took the request personal and as a challenge to her authority; which was the motivating factor for arresting the Plaintiff.

It is evident that the Plaintiff questioning the Defendant infuriated her, was offensive to her and thus she engaged in a retaliatory arrest of the Plaintiff's person. There is no evidence that the Defendant complied with the Plaintiff's repeated request for a superior, in direct contradiction of the MTA's SOPs.

To further victimize and retaliate against the Plaintiff, the Defendant walked the Plaintiff through the subway station with her breast exposed also in direct contradiction of the MTAs SOPS and the Plaintiff's rights.

Finally, the use of the force in this instance was also unreasonable. The MTA's SOPs clearly state that "**the actions of a prisoner are not just cause for an officer to sacrifice their professionalism**". Even assuming to be true that the Plaintiff was using profanities or other vulgarities toward the Defendant and her cohorts, there was absolutely no justification, whatsoever for the use of force. Moreover, the Plaintiff being upset that she is unlawfully being arrested does not amount to disorderly conduct or resisting arrest. A prudent Officer would be trained to exercise verbal judo or similar techniques to de-escalate situations such as those that were described above.

## CONCLUSION

For all the above stated reasons, and based on the available record, it is my opinion to a reasonable degree of professional certainty that the arrest of the Plaintiff was unlawful and the subsequent use of force was unreasonable, unjustified and entirely preventable.

I reserve the right to amend, update and /or refine my opinions as additional material is provided for my review

**/s/ Felicia Dantlzer /s/**
_____
Felicia Dantzler

# Felicia Dantzler , C.V.

## Employment Highlights

**ALCOHOLIC BEVERAGE REGULATION ADMINISTRATION, WASHINGTON, DC**
**DISTRICT OF COLUMBIA GOVERNMENT**
*FEBRUARY 2007- CURRENT , INVESTIGATOR/COMPLIANCE ANALYST*

Insure compliance with Title 23 and 25 of the District of Columbia's Code. Investigators conduct routine, placard, final and voluntary/cooperative agreement inspections of the alcoholic beverage establishments while the auditor conducts fiscal audits. In addition, investigators examine consumer complaints that may include violations of voluntary/cooperative agreements and conduct appropriate follow-up to police investigations of alleged violations of ABRA. These reports are submitted to the Alcoholic Beverage Control (ABC) Board for disposition. Investigators also conduct covert operations and joint ventures with various other law enforcement agencies. Finally, Investigators attend hearings and give testimony regarding their investigative reports.

**FILENE'S BASEMENT, HUNT VALLEY, MARYLAND**
*SEPTEMBER  2006- FEBRUARY 2007 , DEPARTMENT MANAGER*

In this responsibility I worked with the Store Manager, Assistant Store Manager and other Department Managers as part of the management team to; solve problems, make decisions and be a role model and leader. I was responsible for the day to day management of my specific department which included staffing. scheduling, floor presentation and maintenance, and associate development.

**PERPETUAL PANCAKE PARTNERS, INC., ATLANTIC CITY, NEW JERSEY**
*DECEMBER 2004- AUGUST 2006 , GENERAL MANAGER*

Set and achieved the highest standard in field management, employee experience, customer experience and financial results. Effectively maintained a balance between the results of the customer, the Assistant Manager and the employee, Main Accountabilities In addition to following Perpetual's policies and procedures, Compiled, prepared, and maintained P&L statements, budgets and cost controls in regards to food, beverage and labor goals. This included implementing and practicing proper payroll procedures,  Properly trained and developed both hourly employees and Assistant Managers through quality orientations, direction and feedback, refresher courses, performance evaluations and recognition. Fostered a teamwork environment. Ensured that Safety and Security Awareness were emphasized, practiced and periodically inspected, and that employees were trained in appropriate responses to unsafe situations. Performed required administrative duties, which included processing, in a timely manner, required paperwork for the corporate office, and meeting all necessary deadlines.  Coached and Counseled employees on a timely basis. Also, made decisions on promotions and terminations of employees and taking the appropriate action.

# Felicia Dantzler , C.V.

**METROPOLITAN POLICE DEPARTMENT, WASHINGTON, DC**
**DISTRICT OF COLUMBIA GOVERNMENT**
*November 1990- December 2004*

**POLICE OFFICER  (15 YEARS )**

Stopped  drivers who are operating vehicles in violation of laws; warn drivers against unlawful practices; issue citations and make arrests as necessary. Checked  buildings for physical security. Searched, fingerprint, transported, and book prisoners. Directed traffic at fire, special events, and other emergency or congested situations. Maintained contact with citizens regarding potential law enforcement problems and preserve good relationships with the general public. Assisted in the performance of special investigative and crime prevention duties as required

**FIELD TRAINING OFFICER,  (7 YEARS)**

As a Field Training Officer, provided thorough training, guidance, and evaluation of police officers. Conducted complete investigations of crimes involving juveniles and adults, crimes against persons and property, and crimes involving vice, gaming, and narcotics violations as assigned. Performed undercover and surveillance activities as assigned. Prepared investigative reports and case information, provide evidence and testimony in court. Answered questions from the public concerning local and State laws, procedures, and activities of the Department. Collected , preserved and maintain evidence and property found that is involved with suspected crimes. Developed and maintain good relationships with the public, including informants and contacts which were helpful in criminal investigations. Performed related duties as assigned.

**SPECIAL INVESTIGATIONS OFFICER (VICE UNIT)  (1996 THROUGH 1998)**

Conducted covert and undercover investigation involving the trade of illegal drugs and prostitution. Maintained cover to ensure that the suspect was not aware of an impending investigation. Assisted the U.S. Attorney's Office with the prosecution of cases. Other duties as assigned.

**ACTING POLICE SERGEANT  (1998-2004)**

Performed duties on a rotating shift. Performed as a Desk Sergeant/Patrol Sergeant in support of installation's police and security requirements.  Major duties included, but are were not limited to, assisting the Watch Commander and providing guidance/direction and instruction to field training officers; provided on-the-job training; prepared reports and maintained desk journals; monitored two-way radio communication and compiled statistical criminal activity data.  Assisted in the planning and directing of watch activities; prepared absentee reports and watch schedules/lists for the following day.  Distributed and balanced the workload and rotations among field training offices and police officers.  Assured work was finished by the end of the shift and ensured officers performed the work according to department guidelines.  Resolved

# Felicia Dantzler , C.V.

simple, informal complaints of field training officers, trainees and other police officers and referred others to the Watch Commander

## EDUCATION

April 1991, Metropolitan Police Department Academy
Washington, D.C

University of Maryland, Eastern Shore
1985, Some coursework completed
Journalism

## REFERENCES

As Requested.